728 A.2d 923

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jermont COX, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1997.

Decided May 3, 1999.

Daniel Silverman, for appellant.

Catherine Marshall and Karen A. Brancheau, Philadelphia, Robert A. Graci, Office of Attorney General, for appellee.

Before FLAHERTY, C.J., and ZAPPAPA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION*

NEWMAN, Justice.

In this direct appeal, Jermont Cox (Appellant) raises numerous allegations of trial court error and ineffectiveness of trial counsel following his conviction for the first degree murder of Terence Stewart. We affirm.

## FACTS AND PROCEDURAL HISTORY

Tim Walker (Walker), the head of a Philadelphia drug trafficking enterprise, ordered his lieutenant, Larry Lee (Lee), who worked for Walker, to have Roosevelt Watson (Watson) and Terence Stewart (Stewart) executed. Lee enlisted the Appellant to help him. Watson and Stewart had also worked in Walker's drug business until they had a fight with Walker. After discontinuing the operation, Watson robbed a house where Walker stored and sold drugs in the Germantown section of Philadelphia. In July of 1992, Watson and Stewart stole Walker's Saab automobile. Walker later ordered the murders of Stewart and Watson in retaliation for these robberies.

At approximately 10:00 p.m. on August 18, 1992, Watson's body was found on the pavement at the corner of 58th Street and Haverford Avenue in Philadelphia. He had died of multiple gunshot wounds to the head, chest, abdomen, and back. At approximately 10:00 p.m. on November 8, 1992, police discovered Stewart had been shot when they found him slumped in the front seat of a car at 34th Street and Powelton Avenue. Tia Seidle (Seidle), who was seated in the front passenger seat next to Stewart when he was killed, was standing outside the car when the police arrived. The car, which had collided into another vehicle, had many bullet holes and its windows were shattered. Stewart had been shot repeatedly in the torso, and was pronounced dead at the hospital from the gunshot wounds to his lungs and back.

On January 14, 1993, police questioned the Appellant concerning the unrelated murder of Lawrence Davis (Davis) and arrested him for that crime. At the conclusion of the inter-

view, the Appellant told the police that he had information regarding Stewart's murder and asked if he could expect favorable treatment in the Davis case if he cooperated with the police. The detective told the Appellant that he would make his information and cooperation known to the District Attorney's Office, but he said he could promise no favorable treatment. Nonetheless, the Appellant gave a statement admitting his involvement in the murder of Stewart.

After waiving *Miranda* rights, the Appellant told police that, on November 8, 1992, Lee paged him and said he was coming by car to get him. Lee arrived in a blue Chevrolet Malibu and told the Appellant to drive toward the Philadelphia Zoo on 34th Street. While in the car, Lee removed a semiautomatic weapon from underneath the front seat, explained that Stewart was one of the men who had stolen Walker's Saab, and said that he was going to shoot Stewart. The Appellant said that he parked the Malibu on Brandywine Street and, with his accomplice, waited for Stewart to appear. When Stewart entered a white Malibu with Seidle, his female companion, and drove off, the Appellant followed him. According to the Appellant's statement, as he pulled up next to Stewart's car, Lee opened fire, shooting six to eight bullets at Stewart. The Appellant then drove off with Lee and later that night Lee paid him $500.

Relying on this confession, the police arrested the Appellant for the murder of Stewart. Because police had information from other sources that Watson had stolen Walker's car with Stewart, they then asked the Appellant if he knew anything about Watson's murder. The Appellant told them he did, and agreed to give a statement. He again waived his *Miranda* rights, and explained that Watson was involved in the drug business with Walker until Watson robbed Walker's Germantown drug house, where Davis was murdered. The Appellant explained that after Watson had left threatening messages for Lee in Germantown, Walker "put a [$10,000] price on" Watson.

According to this statement, during an entire week in early August 1992, the Appellant and Lee searched unsuccessfully

for Watson. Lee drove the car and "the plan was" that when they spotted Watson, the Appellant would kill him. A short time later, the Appellant then told police, he read a newspaper report of Watson's murder. When he confronted Lee with this information, Lee supposedly told him that he had "t[aken] care of" the problem they had with Watson. The Appellant denied knowing what kind of gun Lee had used to kill Watson.

On April 28, 1993, with his trial date for the murder of Davis approaching, the Appellant contacted Detective Robert Snell (Snell) who had taken his statements on January 14, 1993, and said he wished to speak with the detective again. The next day Detective Walter Hoffer transported the Appellant from the prison to Homicide Headquarters for further questioning. After receiving *Miranda* warnings and waiving his rights, the Appellant said that he wished to provide more information about the Watson murder. The Appellant said, "I want to cooperate and help myself" (N.T. 4/10/95, 32–33, 55–62).

The Appellant explained that in August 1992, he had been at a bar with Lee when Walker paged Lee to inform him that Watson would soon be at a telephone booth at 58th Street and Haverford Avenue. The Appellant knew that Lee was going to kill Watson because there was a hit out on Watson, and Lee and Walker had a problem with him. According to the Appellant, Lee told him that "he would do the shooting and I would do the driving." The Appellant said that when they spotted Watson, Lee got out of the car, approached Watson at the phone booth, and shot him six times with a silver revolver. The Appellant then drove to a bar at 54th and Ruby Streets where Lee left him to report the successful "hit" to Walker. Three days later, Walker paid the Appellant $500.00 for killing Watson. After Appellant gave this confession, the police arrested him and charged him with the murder of Watson.

Besides Appellant's confessions concerning the two murders, ballistics evidence established that the .38 caliber bullets recovered from Watson's body had been fired from the same gun that fired the .38 caliber bullets recovered from Davis' body. Stewart was killed with a different weapon. Kimberly

Little (Little) testified that on July 19, 1992, she saw the Appellant shoot Davis[1] outside Walker's Germantown drug house to end a fight between Lee and Davis. Little had seen the Appellant retrieve the gun from Lee's car. Another witness, Robert David (David), who worked for Walker and Lee's drug operation, confirmed the Appellant's statement that Watson had robbed one of Walker's drug houses, and that the murder victims, Watson and Stewart, had stolen Walker's car.

The Appellant entered into a "Memorandum of Understanding," on November 15, 1993, with the Philadelphia District Attorney's Office in which he stated he would plead guilty to the first degree murders of Watson and Stewart and receive concurrent life sentences. In exchange, the Appellant agreed to cooperate in the prosecutions of Walker and Lee. The Appellant entered his guilty pleas before the Honorable Robert A. Latrone in the Court of Common Pleas of Philadelphia on that same day. The Appellant filed a pro se motion to withdraw his pleas on January 24, 1994, without having provided the promised assistance in the prosecutions of Lee and Walker. On May 3, 1994, Judge Latrone granted the Appellant's motion and new counsel, Marlene Cooperman, Esquire, was appointed to represent the Appellant.

The Appellant filed a motion to suppress his statement concerning the Stewart murder and two statements concerning the Watson murder. On April 4, 1995, the Honorable John J. Poserina denied suppression. On April 5, 1995, Judge Poserina ruled that the Commonwealth could introduce evidence that showed Appellant shot Davis with the same gun used to kill Watson was admissible.

After a three-day trial, a jury sitting before Judge Poserina convicted the Appellant of two counts of murder in the first

---

1. On October 28, 1993, the Honorable Carolyn Temin found the Appellant guilty of the first degree murder of Davis, criminal conspiracy, and possession of an instrument of crime. The Superior Court on June 2, 1995, affirmed the judgments of sentence in a memorandum opinion. *Commonwealth v. Cox*, 445 Pa.Super. 624, 664 A.2d 1054 (1995). This Court denied the Appellant's petition for allowance of appeal. *Commonwealth v. Cox*, 544 Pa. 623, 675 A.2d 1242 (1996).

degree, criminal conspiracy, and possession of an instrument of crime. On April 11, 1995, after deliberating concerning Appellant's penalty, the jury sentenced the Appellant to life imprisonment for the Watson murder and to death for the Stewart killing. As aggravating circumstances in the Stewart murder, the jury found that the Appellant was paid to commit the murder,[2] that in killing Stewart the Appellant created a grave risk of death to another person,[3] and that the Appellant had been convicted of another murder.[4] It found that the aggravating circumstances outweighed the two mitigating circumstances presented.[5] Represented by different counsel, the Appellant now appeals. The Superior Court affirmed his life sentence for the first degree murder of Watson, and only the conviction for the murder of Stewart is before this Court.[6]

## DISCUSSION

### I. *Allegations of Error in the Guilt Phase*
#### *Sufficiency of Evidence*

█ The Appellant has not challenged the sufficiency of the evidence to sustain the verdict of first degree murder for the killing of Stewart. Nevertheless, in all cases of first degree murder in which the death penalty has been imposed, this Court performs an independent review of the sufficiency of the evidence supporting the conviction for first degree murder, regardless of whether the appellant seeks such review. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

**2.** 42 Pa.C.S. § 9711(d)(2).

**3.** Id. § 9711(d)(7).

**4.** Id. § 9711(d)(11).

**5.** Id. § 9711(e)(5) (killing committed under extreme duress or under substantial domination of another person), and § 9711(e)(8) (other evidence of mitigation).

**6.** This Court has exclusive jurisdiction of appeals in cases in which the death penalty has been imposed. 42 Pa.C.S. § 722. The Superior Court has jurisdiction of direct appeals in all other murder cases. 42 Pa.C.S. § 742.

When reviewing a sufficiency of the evidence claim, an appellate court must view all of the evidence, and the reasonable inferences to be drawn from that evidence, in the light most favorable to the Commonwealth as verdict winner and must determine if the evidence was sufficient to enable the fact finder to conclude that all of the elements of the offenses were established beyond a reasonable doubt. *Commonwealth v. Burgos,* 530 Pa. 473, 610 A.2d 11 (1992). To sustain a conviction for first degree murder, the Commonwealth must prove a human being was unlawfully killed; the accused did the killing; the killing was done with malice aforethought; and the killing was willful, deliberate and premeditated. *Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203 (1997); *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991). The element that distinguishes first degree murder from all other degrees of murder is the presence of a willful, deliberate and premeditated intent to kill. *Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293, *cert. denied,* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). The Commonwealth may prove this specific intent to kill by circumstantial evidence. *Id.* Such circumstantial evidence may consist of the accused's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Rivers,* 537 Pa. 394, 644 A.2d 710 (1994), *cert. denied,* 516 U.S. 1175, 116 S.Ct. 1270, 134 L.Ed.2d 217 (1996).

Viewed in the light most favorable to the Commonwealth, the evidence proved that the Appellant planned and carried out the contract killing of Stewart with Lee. This clearly satisfies the statutory elements of first degree murder, and the evidence is therefore sufficient to sustain the conviction.

### Voir Dire

Cox argues that he is entitled to a new trial because the trial court's voir dire process excluded some potential jurors who had reservations about the death penalty but were not "irrevocably committed" to vote against the death penalty. He also alleges that trial counsel was ineffective because she

did not object to this procedure. The trial court has wide latitude in supervising the manner in which voir dire is conducted, including the power to prevent further voir dire when responses to death qualification questions prove that additional inquiries will be fruitless. *Commonwealth v. Jasper*, 531 Pa. 1, 610 A.2d 949 (1992). The trial court's decision will not be overturned unless it is lacking in support. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

■ The United States Supreme Court has held that it is unconstitutional to exclude venirepersons simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); *Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). It is well settled that a prospective juror may be excluded for cause "when his [or her] views on capital punishment are such as would 'prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his instructions and his oath.'" *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068, 1073 (1988), *quoting Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■ Counsel is presumed to be effective and it is the defendant's burden to prove otherwise. *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074 (1993). A defendant alleging ineffective assistance of counsel must prove that the underlying claim is of arguable merit, counsel had no reasonable basis for the act or omission in question, and but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997); *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226 (1994), citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). To prove prejudice, "a defendant is required to show that counsel's ineffectiveness was of such magnitude that the verdict would have been different

absent counsel's alleged ineffectiveness." *Commonwealth v. Howard,* 538 Pa. 86, 645 A.2d 1300, 1308 (1994), *citing Pierce.*

The trial court employed a voir dire procedure that asked the prospective jurors four questions concerning their ability to impose the death penalty. These questions were designed to ascertain whether the jurors could follow the court's instruction and impose the death penalty if the evidence warranted it. The prosecutor and defense counsel agreed to the removal for cause of any juror who responded affirmatively to two or more of the following questions:

(1) [I]f you decide that a person has committed willful, deliberate, premeditated murder with malice afore- thought, then you, the jury, will also pass sentence on the defendant. There are only two possible sentences, life imprisonment and the death penalty. The question[ ] I'm asking you is whether or not you believe you could follow the law and apply the law in a case where the prosecution is seeking the death penalty.

Now, here's the language of the U.S. Supreme Court: Will your own view on imposing a death penalty in a case where the prosecution is seeking a death penalty, ... prevent you or substantially impair you in performing your duty as a juror in accordance with the instructions on the law as given by the court and your oath as a juror?

(2) If you have a religious, a moral or conscientious reason against voting for death penalty, raise your card.

(3) If the jury finds a defendant guilty of murder in the first degree, the law will then be explained .... concerning when the sentence may be life imprisonment and when the death penalty may possibly apply. The question is: Will you be able to follow the court's instructions?

(4) I will instruct you on circumstances under which the death penalty can be imposed pursuant to the law of Pennsylvania. After you hear my instructions and after you've heard all the evidence, if you've heard all the evidence, if you're sitting on a jury and you decide that from the facts this is a case which warrants under law ...

death as a penalty, could you impose it? If you don't think you could impose the death penalty, no matter what the circumstances, raise your card.

(N.T. 3/30/95, 56–59; see also 3/31/95, 18–20; 4/3/95, 5–9; 4/4/95, 6–10; 4/5/95, 7–9, 72–74).

After reviewing the record of the entire voir dire, we conclude that the trial court exercised its discretion properly when it dismissed certain potential jurors for cause after they answered positively to two or more of these questions. In its Opinion, the trial court explained that based on years of experience, jurors who have answered in the affirmative to two or more of the above questions were beyond rehabilitation with further questioning. Trial Court Opinion, pp. 4–5.

In addition, trial counsel agreed to this procedure, and we cannot conclude that trial counsel was ineffective, trusting the record in this case. Indeed, it is likely that trial counsel also concluded that these jurors were beyond rehabilitation and therefore had a reasonable basis for agreeing to this procedure. Moreover, the Appellant has not alleged that trial counsel's agreement to this procedure prejudiced him.

We reject the Appellant's argument that trial counsel should have continued to question the excused jurors to determine whether they were "irrevocably committed to vote against the death penalty." Appellant's brief, p. 15. That is not the correct standard to apply when evaluating potential jurors in a death penalty case. The trial court correctly removed jurors when it found that their views on capital punishment would "prevent or substantially impair" the performance of their duties in accordance with their instructions and oath pursuant to *Holland*. Accordingly, no relief is due.

### Prosecutorial Misconduct

The Appellant argues that trial counsel was ineffective for not objecting during the prosecutor's opening statement when he suggested Appellant was involved with the drug organization, and when later testimony labeled him a drug dealer. It is well established that a prosecutor may argue all

reasonable inferences that may be derived from the evidence. *Commonwealth v. McNair,* 529 Pa. 368, 603 A.2d 1014 (1992). Comments in a prosecutor's opening statement do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Jones,* 530 Pa. 591, 610 A.2d 931 (1992).

Although no witness directly implicated the Appellant in drug dealing, there was an ample basis in the evidence for the jury to infer the Appellant's involvement with drugs based on his relationship with Walker and Lee and his role in the murders as their conspirator. The Appellant's guilt of the two murders was premised on his conspiracy with Walker and Lee. Walker ordered the murders to avenge Watson, who had robbed his drug house and to retaliate against both Watson and Stewart, who had stolen his car. Therefore, Walker ordered his lieutenant, Lee, to carry out the executions. Lee, in turn, recruited the Appellant. From the evidence presented, the prosecutor properly referred to the Appellant as a "worker" for Walker in his opening statement. Trial counsel cannot therefore be deemed ineffective because she did not object to this reference.

Next, the Appellant complains that trial counsel was ineffective because he did not object when the prosecutor referred in his closing argument to other crimes that the Appellant had committed. A prosecutor is entitled to refer to the evidence, may argue any legitimate inferences from that evidence, and "must be free to present his or her arguments with logical force and vigor." *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980). The effect of the prosecutor's conduct must be evaluated in context and depends on the atmosphere of the entire trial. *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873 (1975).

Thus, the prosecutor is entitled to refer to the evidence and argue that it establishes the guilt of the accused.

*Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300, 309 (1987). He may also respond fully to defense arguments and those responses are to be evaluated in context. *Commonwealth v. Johnson,* 527 Pa. 118, 588 A.2d 1303, 1307 (1991); *Commonwealth v. Brown,* 489 Pa. 285, 302 n. 6, 414 A.2d 70 (1980). Reversible error exists only if the unavoidable effect of the supposedly offending language would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence and render a true verdict. *Commonwealth v. Carpenter,* 511 Pa. 429, 439, 515 A.2d 531 (1986).

The Appellant claims that the prosecutor, in his closing argument, improperly introduced the notion that defendant had been arrested for or had confessed to the killing of Lawrence Davis. This allegation is a mischaracterization of the record, which demonstrates that it was the defense that first introduced this matter during trial. At trial, Detective Snell testified to the circumstances surrounding the Appellant's statements regarding the instant murders on January 14, 1993. During Snell's testimony, the Commonwealth only introduced evidence that, at the time of the Appellant's arrest for the Stewart murder, he was "being questioned on another matter." Snell also testified that the Appellant tried to gain favor with the police during this questioning concerning that other "matter" by volunteering information about the Stewart murder. The nature of that "other matter" did not become clear to the jury until defense counsel established that the Appellant was in fact in custody for the Davis murder.

In defense counsel's closing argument, she insinuated that homicide detectives had led the Appellant to believe that if he gave information implicating Lee and Walker in the Stewart and Watson murders, they would help him in connection with the Commonwealth's prosecution of him for the Davis homicide. In that context, defense counsel revealed that the same homicide detectives investigating the Watson and Stewart killings also had information about the Davis shooting and Davis had actually died.

Defense counsel then argued that the Appellant's confessions were entirely meaningless. She asserted that the homicide detectives had "spoon-fed" the Appellant's statements to him to force him to implicate Walker and Lee. Defense counsel attempted to use Appellant's confessions to the Stewart and Watson murders to show that the police had framed Appellant for both of those killings while he was in custody for the Davis murder.

In addition, the evidence at trial established that the .38 caliber bullets recovered from Watson's body on August 18, 1992, had been fired from the same gun that fired the .38 caliber bullets recovered from the body of Davis a month earlier, on July 19, 1992. In a pretrial ruling, the trial court ordered that this evidence, together with the testimony of Little, who had seen the Appellant shoot Davis on July 19, 1992, was admissible to prove the Appellant's identity and access to the murder weapon.[7]

Because of the evidence and defense counsel's closing argument, the trial court permitted the prosecutor to argue in closing argument that, following the Appellant's arrest for the Davis murder, Appellant acted in his own self-interest in admitting to the Stewart and Watson killings. This argument required the jurors to consider an alternative inference than the one offered by the defense. After reviewing the entire record, we conclude that this argument was proper and was a fair response to the arguments of defense counsel. *Smith.* Defense counsel cannot be deemed ineffective for failing to raise an issue that has no merit and therefore trial counsel was not ineffective.

Another allegation of ineffective assistance of counsel during the guilt phase of Appellant's trial pertains to defense counsel's decision not to object to a portion of the prosecutor's closing argument dealing with the police officers' motive to tell the truth. During defense counsel's closing argument, counsel repeatedly argued that the police officers lied when they testified that they did not promise the Appellant anything in

---

7. The admissibility of that evidence is not at issue in this appeal.

exchange for his confessions. The defense also claimed that the police fabricated the Appellant's statements in order to arrest Walker and Lee. In response to this theory, the prosecutor explained the police would be subject to charges of perjury, by stating the following:

"... they [the police] put their badge on the line, their families, their pensions, just to frame the defendant."

Notes of testimony, April 10, 1995, p. 117. The effect of the prosecutor's conduct must be evaluated in context and depends upon the atmosphere of the entire trial. *Stoltzfus.* He or she may also respond fully to defense arguments and those responses are to be evaluated in context. *Johnson ; Brown.* It is well settled that the prosecutor's statements must be considered in the context in which they were made. *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987). This argument was an appropriate response to defense counsel's argument that the police had lied and fabricated the Appellant's confession. Trial counsel was not ineffective because she did not object to this argument.

### *Alleged Ineffectiveness for Failure to Cross Examine Witnesses*

The Appellant also claims that trial counsel was ineffective because she did not adequately cross-examine two Commonwealth witnesses, David and Little. The purpose of the cross examination would be to show bias because each had open criminal charges. According to the Appellant, David had been convicted of theft, a crime involving crimen falsi that was graded as a felony, and received a suspended sentence three months before he testified in this case. He also had pending criminal charges against him, an open bench warrant, was on probation and/or parole for three different cases. The Appellant states that Little also had pending robbery charges against her when she testified.

It is the general rule that the accused has the right to cross-examine Commonwealth witnesses for bias stemming from the existence of open criminal charges. *Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192 (1993). This cross-examina-

tion is especially important if the defendant's guilt depends on the credibility of the witness in question or when there are conflicting versions of the evidence. *Commonwealth v. Birch,* 532 Pa. 563, 616 A.2d 977 (1992).

Because it appears that this claim has arguable merit and we can see no strategical reason that trial counsel chose not to pursue this line of cross-examination, we must examine whether the Appellant suffered any prejudice resulting from trial counsel's actions. The Appellant's confessions to these murders were the most probative evidence of his guilt, and David and Little's testimony corroborated his confessions. David gave testimony about the facts leading up to these murders. He admitted his involvement in the drug operation and explained the relationships between the victims and Walker and Lee. Little testified that she saw the Appellant shoot Davis on July 19, 1992. Because of this information, ballistics evidence and Little's testimony established that the gun used to kill Watson on August 18, 1992 was the same gun used to shoot Davis.

Although the Appellant claims that the sole evidence of motive came from David's testimony, this is not true. The Appellant's own statements explained his motive for these killings when he told the police that Walker had ordered Lee to "hit" Stewart and that he had "put a price on" Watson and Stewart. When considered in light of all of the evidence, including the Appellant's confessions, we conclude that trial counsel's failure to cross-examine these witnesses concerning bias stemming from an outstanding warrant, criminal charges, probations, or paroles, this would not so prejudice the Appellant that the result of this trial would have been different if counsel had pursued this line of questioning. There was also other credible evidence of motive in the record. Accordingly, no relief is due for this claim.

### Admissibility of Motive Evidence

Likewise, Appellant's next allegation of ineffective assistance of counsel concerning the admission of the Common-

wealth's evidence of motive must also fail. According to the Appellant, there was no competent evidence of motive because the Commonwealth's evidence was inadmissible hearsay. Again, the Appellant's own confessions firmly established his motive, which was to kill the victims in furtherance of Walker's drug business and to avenge a robbery and theft of his car. Any other evidence of motive was merely cumulative of the evidence already in the record. In addition, the record does not support the Appellant's claim that other evidence of motive, such as testimony from David, from the police officer concerning the theft of Walker's car, from a detective about his reasons for questioning the Appellant, and such testimony would all be inadmissible.

This entire claim depends on speculation that if trial counsel had objected to the admission of this evidence on the grounds of hearsay, the Commonwealth could not have laid a sufficient foundation for the admission of such evidence. Our Court has held that claims made in a vacuum cannot provide a basis for relief. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). The Appellant has not proven his allegations of hearsay, and this claim therefore cannot provide a basis for relief. *See Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989).

### Admissibility of Evidence of Unemployment

The Appellant also urges this Court to hold that trial counsel was ineffective because she did not object to testimony from a police detective that Appellant was unemployed at the time of his arrest. This Court has held that the Commonwealth cannot use evidence of a defendant's unemployment to establish a motive to commit burglary. *Commonwealth v. Haight*, 514 Pa. 438, 525 A.2d 1199 (1987). However, in the present case, the Commonwealth did not elicit this comment to establish a motive and did not make any use of these references, which testimony was given when the detectives explained the Appellant's answers to background questions before confessing to these crimes. This case is therefore distinguishable from *Haight*, and we con-

clude that trial counsel was not ineffective for declining to object to this testimony.

## II. Allegations of Error in the Penalty Phase

The Appellant argues that the trial court erred because it did not instruct the jury to consider evidence of his involvement with drugs for a limited purpose. He also claims that trial counsel was ineffective because she did not request such an instruction during the penalty phase.

■■■ However, the only references to the Appellant's drug activity during the penalty phase were introduced by the defense as mitigating evidence weighing against the imposition of the death penalty. Appellant's family members testified for him and said that drugs had led him astray and that his mother's drug and alcohol problems led to his involvement with drugs. He also introduced evidence that he had completed a drug rehabilitation program while he was in prison. Defense counsel used this evidence to argue that his drug involvement placed him in a position where others could coerce him to kill the victims. In our examination of this evidence and argument, there is no justification to conclude that trial counsel was ineffective for failing to request a limiting instruction in this regard.

## Definition of Terms

The next allegation of penalty phase error concerns the fact that the trial court did not define the phrase "grave risk of death." During the penalty phase, the Commonwealth argued that it established the aggravating circumstance contained in 42 Pa.C.S. § 9711(d)(7), which provides that it shall be an aggravating circumstance if the defendant "knowingly created a grave risk of death to a person other than the deceased." In *Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992), this Court held that juries can understand the meaning of "grave risk" and to apply their common sense and experience to the facts to determine whether a grave risk of death existed.

 The Commonwealth argued that the Appellant created a grave risk of death to Tia Seidle when he and Lee fired six shots at Stewart while he was driving and Tia Seidle was sitting next to him in the front seat of the car. The bullets shattered the windows of the car and Stewart lost control of the vehicle, which collided with another automobile. Based on these facts, there is no reason to conclude that the jury was unable to understand the meaning of "grave risk" or apply that term to the facts of this case and therefore no relief is due.

 In a similar claim, the Appellant alleges ineffective assistance of counsel during the penalty phase because counsel did not request a definition of the term "extreme duress." Pursuant to 42 Pa.C.S. § 9711(e)(5), it is considered to be a mitigating circumstance if the defendant committed the killing while acting under extreme duress. For the same reasons we expressed in *Wharton*, we believe that juries can understand the term "extreme duress" and that no additional instructions are necessary to define this term.

 The next allegation of error during the penalty phase is troubling because the attorney representing the Appellant in this appeal has misstated the record. The Appellant avers that the trial court erred because it did not adequately define the phrase "preponderance of the evidence" as it pertains to the burden of proof applicable to mitigating factors. The Appellant's brief to this Court states the following:

The only mention by the [trial] court of the burden of proof applicable to the jury's consideration of mitigating circumstances appears in the following phrase:

Aggravating circumstances must be proven by the Commonwealth of Pennsylvania beyond a reasonable doubt while mitigating circumstances must be proven by the Defendant by a preponderance of the evidence; that is, by a greater weight of the evidence.

Brief of Appellant, p. 57 (citation omitted). This is not true. The trial court later gave the jury the following instruction:

Aggravating [circumstances] must be proven by the Commonwealth beyond a reasonable doubt. The mitigating only have to be proven by the Defense by a preponderance of the evidence; that is, *more likely than not* of the evidence. [sic] It's a different standard.

\* \* \*

[E]ach of you is free to regard a particular mitigating circumstance as present despite what the other jurors may believe. This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives a defendant the full benefit of any mitigating circumstances. It's closely related to the burden of proof requirement.

Remember, the Commonwealth must prove any aggravating circumstances beyond a reasonable doubt while the Defendant only has to prove mitigating circumstances by a preponderance of the evidence.

N.T. April 11, 1995, p. 47, 62 (emphasis added). This Court has expressly approved the use of the phrase "more likely than not" when defining the preponderance of the evidence burden of proof. *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992). Hence, the trial court did not err and trial counsel was not ineffective for not requesting further definition of this burden of proof.

### *"Life means life" Instruction*

The next allegation error of is that the trial court should have instructed the jury that a sentence of life imprisonment means life in prison without parole. The Appellant also argues that trial counsel was ineffective because she did not request such an instruction pursuant to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). This Court has held that such an instruction may be required only in cases in which the prosecution makes the defendant's future dangerousness an issue in the case. *Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317 (1996); *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (1995). Because the Commonwealth did not place the defendant's future danger-

ousness in issue during the penalty phase, the defendant was not entitled to this instruction and trial counsel was not ineffective because she did not request it.[8]

## Alleged Prosecutorial Misconduct

The next allegation of error during the penalty phase of the Appellant's trial concerns an allegation that the prosecutor appealed to "eye-for-an-eye" justice when he stated the following during his closing argument:

> It's not vindictive. I'm asking you to follow the law. Show him the same mercy he showed Lawrence Davis, Terrance Stewart, and Roosevelt Watson. And when you weigh, when you consider aggravating, when you consider mitigating, I'm going to ask you to consider the weight of life. A human being. What is the worth of a life? Is there anything you can possibly consider that weighs more? And you put the taking, the violent taking without mercy of one life. You weigh. And you put on top of it a second life, a third life. How? Ask yourselves how, Ladies and Gentlemen of the Jury, even without those two other aggravating circumstances, how can anything outweigh that? Three human beings. Three lives. Weight, Ladies and Gentlemen of the Jury.
>
> . . .
>
> Please Ladies and Gentlemen of the Jury. I'm standing up here as the representative of the Commonwealth, of the people. I'm asking you as a representative of the people to tell the Defendant that you know what the three lives are worth. It's still a bad tradeoff, three lives for one. But it's the tradeoff the law says.

Notes of Testimony, April 11, 1995, pp. 51—53. According to the Appellant, the argument exceeded the bounds of oratorical flair because it did not relate to any of the enumerated

---

8. Because we conclude that Appellant's future dangerousness was not at issue in this case, we need not address the Commonwealth's argument that a *Simmons* instruction is misleading because of the possibility that the Governor could commute a sentence or pardon the Appellant, or the Legislature might amend the death penalty statute.

aggravating circumstances in the death penalty statute. We disagree.

The prosecutor may refer to the evidence during his or her closing argument during the penalty phase of trial. *Commonwealth v. Williams,* 541 Pa. 85, 660 A.2d 1316 (1995). The prosecutor may also present argument for the sentence of death and argue that the evidence establishes the existence of aggravating circumstances. *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983). This Court has specifically held that the prosecutor may argue that the defendant "showed no sympathy or mercy to his victims," and may employ "oratorical license." *Commonwealth v. Baker,* 531 Pa. 541, 558, 614 A.2d 663 (1992), *quoting Commonwealth v. Banks,* 513 Pa. 318, 521 A.2d 1, *cert. denied* 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987).

Section 9711(d)(11) of the death penalty statute contains the following aggravating circumstance:

> The defendant has been convicted of another murder committed in any jurisdiction and committed whether before or at the time of the offense at issue.

42 Pa.C.S. § 9711(d)(11). Founded on the Appellant's conviction for the murder of Davis in October 1993, which was before the trial in this case, the Commonwealth argued that the jury should find that it proved this aggravating circumstance. We hold that the prosecutor was permitted to argue in favor of a death sentence based, in part, on his conviction for the murder of Davis. Therefore, these comments were proper argument accepting the evidence of the pertinent aggravating circumstances in this case.

### Sufficiency of Evidence Concerning Grave Risk of Death to Another

The Appellant next argues that the evidence was insufficient to sustain the jury's finding that the Appellant knowingly created a grave risk of death to another person. He also argues that trial counsel was ineffective because she

did not argue that the evidence was insufficient to establish this aggravating circumstance. This claim is frivolous.

First, we note that the Appellant stated in his confession that he saw a black female enter the car and drive away with Stewart. Furthermore, Seidle testified at the penalty hearing that she was seated next to Stewart when a barrage of gunfire hit their car. This evidence clearly establishes that the Appellant knew that Seidle was in the car when he and Lee murdered Stewart. Thus, there is no merit to his allegation that trial counsel was ineffective because she did not object to the submission of this aggravating circumstance to the jury.

In another attack on the penalty phase of his trial, the Appellant argues that trial counsel was ineffective because she did not.attempt to disprove the aggravating circumstance of "contract killing." The basis of the Appellant's argument is that there was no evidence that the Appellant knew, at the time he agreed to kill Stewart, that he would be paid for the killing. Section 9111(d)(2) of the death penalty statute defines this aggravating circumstance as follows:

> The defendant paid *or* was paid by another person *or* had contracted to pay *or* be paid by another person *or* had conspired to pay *or* be paid by another person for killing the victim.

42 Pa.C.S. § 9711(d)(2) (emphasis added). Scrutinizing the express language of the statute, the Commonwealth may establish this aggravating circumstance any one of six ways. In the present case, the Commonwealth established that Lee paid the Appellant five hundred dollars to kill Stewart. The evidence was clearly sufficient to establish this aggravating circumstance, and trial counsel therefore had no legal basis to object to the jury's consideration of this aggravating circumstance.

### Alleged Ineffectiveness for Failure to Argue Mitigating Factors

The next allegation of ineffectiveness concerns the fact that trial counsel did not argue that the Appellant's cooperation

with the police after his arrest is a mitigating factor. He argues that the information that he provided the police about Walker and Lee's drug business was "powerfully mitigating" and that trial counsel had no strategic basis for not making this argument. We disagree.

The record shows that the Appellant pled guilty to both of these murders on November 15, 1993. In exchange for his guilty pleas, cooperation, and testimony against Walker and Lee, the Commonwealth agreed to two life sentences. However, the Appellant later changed his mind and filed a motion to withdraw his guilty pleas, which the court granted. Consequently, if defense counsel had argued that the Appellant's cooperation with the Commonwealth was a mitigating factor, the Commonwealth could have presented evidence to show that he withdrew his agreement and did not testify against Walker and Lee.[9] Because this would have been damaging evidence against Lee, trial counsel had a reasonable basis for not presenting evidence of the Appellant's alleged cooperation with the Commonwealth and by that allowing the Commonwealth to introduce evidence of his true conduct here.

### Alleged Ineffectiveness for Failing to Request a Jury Instruction

In his next allegation of ineffective assistance of counsel, the Appellant argues that trial counsel was ineffective because she did not request an instruction directing the jury to weigh aggravating and mitigating circumstances independently as to each case. The Appellant claims that because this was a consolidated sentencing hearing involving two murders, the trial court should have fashioned a special instruction that cautioned the jury against according less qualitative weight to particular mitigating evidence solely because the same jury will have relied upon it twice. We reject this claim.

This Court has never held that such an instruction is necessary when two or more murders are consolidated for

9. According to the Commonwealth's brief, Walker and Lee have not been charged with these murders.

trial and sentencing hearings. Indeed, the Appellant has not cited a single case from Pennsylvania or any other jurisdiction in support of this claim. Thus, there is no basis for this Court to conclude the trial counsel was ineffective for failing to request such an unusual instruction in this case.

Moreover, we note that the jury imposed a life sentence for the murder of Watson and death for the murder of Stewart. In the Watson murder, there was no evidence that anyone besides the victim was placed in danger. However, the jury sentenced the Appellant to death for the Stewart murder, in which the Appellant's conduct created a grave risk of death to Seidle. It therefore appears the jury weighed all of the evidence carefully in each case and reached independent and rational results. Trial counsel was effective because she did not request this unusual instruction.

### Constitutionality of the Death Penalty Statute

The Appellant's final claim is that Pennsylvania's death penalty statute is unconstitutional as it is applied in Philadelphia because the Philadelphia District Attorney's Office does not exercise any discretion in deciding whether to seek the death penalty. The Appellant does not offer any legal argument in support of this claim. Instead, his brief contains a two-sentence discussion of this issue. He requests this Court to remand this case to the trial court for an evidentiary hearing so that he may offer statistical data in support of this claim.[10] However, the Appellant does not offer proof regarding what evidence he would offer in support of his claim. We reject this claim because there is absolutely no legal argument to support it. *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987).

10. In the alternative, the Appellant seeks merely to preserve this issue in the event that this Court holds that the death penalty statute is unconstitutional as it is applied in Philadelphia. No further discussion of this issues is necessary because the inclusion of this issue in the Appellant's brief manifests the Appellant's intention to preserve this issue.

 

*Statutory Review*

Having addressed each of Appellant's claims, we must also conduct the review mandated by 42 Pa.C.S. § 9711. Section 9711 requires this Court to affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d); or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).[11]

Our review of the record reveals that Appellant's death sentence was not the product of passion, prejudice or any other arbitrary factor and that there was sufficient evidence to support the three aggravating circumstances found by the jury. We have also conducted an independent review of the sentencing data compiled by the Administrative Office of Pennsylvania Courts. Considering both the circumstances of the crime and the character and record of the Appellant, we find that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of sentence of the Court of Common Pleas of Philadelphia and

11. Effective June 25, 1997, the General Assembly repealed proportionality review from the death penalty statute by deleting all of subsection (h)(3)(iii) and a portion of subsection (h)(4) that references proportionality review. Act of June 25, 1997, No. 28, § 1 (Act 28), effective immediately. However, because Appellant's death sentence was imposed before the effective date of the act, he is entitled to proportionality review. *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426 (1997).

400

direct the Prothonotary to transmit the records to the Governor.

Chief Justice FLAHERTY files a concurring opinion in which Justice NIGRO joins.

FLAHERTY, Chief Justice, concurring.

I join the majority opinion, but make reference to my concurring opinion in *Commonwealth v. King*, 554 Pa. 331, 721 A.2d 763 (1998).

Justice NIGRO joins this concurring opinion.