J-S02013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL BROOKS | : | |
| | : | |
| Appellant | : | No. 970 EDA 2020 |

Appeal from the PCRA Order Entered February 24, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005547-2012

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:         **FILED: APRIL 16, 2021**

Appellant, Michael Brooks, appeals *pro se* from the post-conviction court's order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the facts and procedural history of Appellant's case, as follows:

### FACTUAL BACKGROUND

Mr. Daniel Buchanan[, the victim,] battled an addiction to opiates. N.T.[,] 01/29/13, [at] 147-50. The victim attempted to stay clean, sustained employment, and attempted to support his daughter prior to his murder. [*Id.* at] 148. The victim had a reputation in the drug-world for not paying drug dealers. [*Id.* at] 266. Appellant, involved in the drug trade, was owed money by the victim. N.T.[,] 01/30/13, [at] 175.

On June 15, 2007, around 5:00 a.m., the victim was in his car speaking with another drug addict on the sidewalk, Ms. Sandra Wilson, when Appellant recognized him. N.T.[,] 01/29/13, [at] 268-69. Appellant then approached the victim's vehicle and screamed[,] "I'm about to merk [*sic*] your ass[,]" while reaching

for something behind his back. [*Id.* at] 269. Ms. Wilson then heard several gunshots as she turned her back to the vehicle and moved away. [*Id.* at] 270, 290. Another eyewitness made a statement to police that she saw Appellant state[,] "That's the nigger that taxed me. I'm going to murk his ass[,]" just before he pulled out a handgun from his back waistband and several shots rang out. N.T. 01/30/13, pp. 38-39. A third witness heard the gunshots, saw Appellant in the proximity, and then [saw him] run into a nearby home. [*Id.* at] 65.

The victim was shot four times by Appellant from the street into the victim's car. N.T.[,] 01/29/13, [at] 36-37. In an attempt to flee, the victim drove off and crashed into a tree. N.T.[,] 01/28/13, [at] 158-59, 169-71; N.T.[,] 01/29/13, [at] 34-35. The victim died as a result of the gunshot wounds, not from the vehicle crash. N.T.[,] 01/29/13, [at] 39-40, 52. Blood analysis revealed the victim had a blood alcohol content of .059 and some cocaine in his system. [*Id.* at] 56.

After the shooting, Appellant entered a nearby home with a gun in his possession, where his girlfriend (at the time) was staying, to wash his hands with bleach. [*Id.* at] 170-71. After washing away any evidence of gun powder residue, Appellant fled in a friend's vehicle and called his girlfriend[,] instructing her to visit the scene of the crime for him. [*Id.* at] 172. During the aforementioned phone call, Appellant admitted to shooting the victim and believing he had killed the victim. [*Id.* at] 173-74. Appellant then told his girlfriend[] that he would kill her and her family if she cooperated [with] law enforcement. [*Id.* at] 174.

## PROCEDURAL HISTORY

On February 4, 2013, Appellant was found guilty by a jury of [first-degree murder],[4] possession of a firearm prohibited,[5] firearms not to be carried without a license,[6] and possessing instruments of crime[7] for the murder of Mr. Buchanan. On March 14, 2013, this [c]ourt sentenced Appellant to life imprisonment for the conviction for [f]irst[-d]egree [m]urder, a consecutive 5 to 10 years of incarceration for [p]ossession of a [f]irearm [p]rohibited, and a consecutive 3½ to 7 years of incarceration for [c]arrying a [f]irearm without a [l]icense. On March 22, 2013, Appellant filed a motion for post[-]sentence relief. On August 6, 2013, this [c]ourt denied Appellant's post-sentence motion.

[4] 18 Pa.C.S. § 250[2]([a]).
[5] 18 Pa.C.S. § 6105([a])(1).

[6] 18 Pa.C.S. § 6106([a])(1).
[7] 18 Pa.C.S. § 907([a]).

On March 13, 2014, Appellant filed a *pro se* PCRA petition and he was appointed counsel. On August 3, 2016, by agreement of the parties, this [c]ourt granted PCRA relief and Appellant's direct appeal rights were reinstated.

Appellant filed a *pro se* appeal to the Superior Court. On August 14, 2018, the Superior Court … affirmed his judgment of sentence. [**See Commonwealth v. Brooks**, 195 A.3d 991 (Pa. Super. 2018) (unpublished memorandum).] Appellant's judgment [of sentence] became final on September 13, 2018.

On May 2, 2019, Appellant filed another [*pro* se] PCRA [petition] and counsel was appointed by this [c]ourt to represent him. On September 4, 2019, PCRA counsel filed a motion requesting leave to amend the petition to raise the following claim: "that trial counsel was ineffective for failing to object to the testimony of Officer Mary Reiff, wherein she testified that [an] eyewitness[,] Ms. Sandy Wilson[,] identified [Appellant] as the person who shot the victim, [because] that … testimony was hearsay and violated his right to confrontation." On September 11, 2019, this [c]ourt granted the amendment.

On September 25, 2019, the Commonwealth filed an answer to Appellant's PCRA [petition].

On October 3, 2019, this [c]ourt issued a [Pa.R.Crim.P. 907] notice of intent [to dismiss Appellant's PCRA petition without a hearing,] based on the Commonwealth's answer and the record in the case.

On November 4, 2019, PCRA counsel filed a motion to withdraw his appearance due to lack of meritorious issues[,] and a [**Turner/Finley** no-merit] letter.[1] On December 5, 2019, Appellant filed an objection to PCRA counsel's no-merit letter and motion to withdraw.

On December 13, 2019, this [c]ourt scheduled a video hearing [for] February 20, 2020. On February 20, 2020, a PCRA hearing was held. On February 24, 2020, this [c]ourt denied Appellant's

_____

[1] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

PCRA petition based on counsel's [**Turner/Finley**] letter and the PCRA hearing. This [c]ourt also granted counsel's motion to withdraw.

On February 26, 2020, Appellant filed a notice of appeal to the Superior Court.[2]

### STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

On March 31, 2020, this [c]ourt ordered Appellant to file a concise statement of errors complained of on appeal. On April 24, 2020, Appellant filed his concise statement of errors[,] alleging the following issues, *verbatim*:

> 1. PCRA Counsel provided deficient performance and ineffective assistance of counsel when counsel filed an amended PCRA Petition then subsequently filed a Finley letter against counsel's own amended PCRA petition effectively acting as an attorney for the prosecution.

> 2. The PCRA Court Judge was bias when the Judge stated during trial that he knew and felt, during the sentencing phase, that the defendant committed the crime. PCRA Counsel failed to preserve this claim.[3]

PCRA Court Opinion (PCO), 9/25/20, at 1-5 (footnotes and some citations to the record omitted).

In Appellants *pro se* brief to this Court, he presents the following single issue in his Statement of the Questions Presented: "Whether PCRA counsel provided deficient performance and ineffective assistance of counsel when counsel filed an amended PCRA petition[, and] then subsequently filed a

_____

[2] We note that Appellant filed two identical, *pro se* notices of appeal, one on March 26, 2020 (docketed at 970 EDA 2020), and one on April 6, 2020 (docketed at 969 EDA 2020). The appeal at 969 EDA 2020 was dismissed by this Court as duplicative of the present, timely appeal at 970 EDA 2020.

[3] Appellant has abandoned this issue on appeal.

[**Turner/**]**Finley** letter against counsel's own amended PCRA petition[,] effectively acting as an attorney for the prosecution?" Appellant's Brief at 3.[4]

Preliminarily, we observe that,

> "[o]n appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, … 36 A.3d 121, 131 ([Pa.] 2012) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." **Commonwealth v. Spotz**, … 18 A.3d 244, 259 ([Pa.] 2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Id.**

**Commonwealth v. Medina**, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (*en banc*).

Within Appellant's single issue, he presents several sub-claims of PCRA counsel's ineffectiveness. We will address each in turn, applying the following standard of review:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's

---

[4] The PCRA court noted that Appellant raised this issue in his *pro se* response to the court's Rule 907 notice, thereby preserving his challenge to PCRA counsel's effectiveness for our review. **See** PCO at 5; **Commonwealth v. Pitts**, 981 A.2d 875, 880 n.4 (Pa. 2009) (holding that a petitioner preserves a challenge to his post-conviction counsel's effectiveness by presenting it in his response to the court's Rule 907 notice and/or counsel's **Turner/Finley** letter).

interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (citations omitted).

In this case, Appellant first posits that his PCRA counsel was ineffective for failing to argue that his trial counsel acted ineffectively by not challenging the Commonwealth's "extract[ing] provisions from … 42 Pa.C.S.[] § 9711, specifically [sections] 9711(a)(1)[,] (2)[,] (3)[,] and (4), [which] constituted an encroachment on legislative intent." Appellant's Brief at 7. Section 9711 governs the procedures for determining whether a defendant convicted of first-degree murder "shall be sentenced to death or life imprisonment." 42 Pa.C.S. § 9711(a). Appellant seemingly argues that, because the jury in his case was not asked to decide if he should be sentenced to death, the Commonwealth "altered/changed the provisions" of section 9711, thereby rendering it unconstitutional and his sentence illegal. Appellant's Brief at 7.

Appellant's argument is meritless. As this Court observed when he raised a similar claim on direct appeal:

Section 9711 governs sentencing procedures in capital cases. It does not apply to this case because the Commonwealth never pursued the death penalty. Appellant appears to argue that his conviction is invalid because the jury never had the option of imposing the death penalty. We see no merit in an argument that Appellant should have been exposed to a harsher sentence than what he received.

*Commonwealth v. Brooks*, No. 2816 EDA 2016, unpublished memorandum at 4 (Pa. Super. filed Aug. 14, 2018). Clearly, it would have been unreasonable for Appellant's trial counsel to have demanded that the Commonwealth seek the death penalty, thereby triggering the procedures set forth in section 9711. Moreover, his sentence is not illegal simply because the Commonwealth chose to concede to the imposition of life incarceration, rather than seeking the death penalty. Thus, Appellant's PCRA counsel was not ineffective for failing to raise this trial-counsel-ineffectiveness claim.

Next, Appellant claims that his counsel was ineffective "for objecting[,] but failing to move for a mistrial[,] when Officer Mary Reiff of the Bristol Township Police Department recounted the out[-]of[-]court statement made by Ms. Sandra Wilson, a witness to the murder." PCO at 6-7. The PCRA court set forth the at-issue testimony by Officer Reiff, as follows:

> [The Commonwealth]: And describe her demeanor in the car ride from Bloomsdale back to your headquarters?
>
> Officer Reiff: Oh, she never stopped talking. And it was how frightened she was about what was going on and how frightened she was of [Appellant] for her safety and the safety of her family.
>
> [The Commonwealth]: And did she continue to indicate to you during the car ride what she had seen [Appellant] do, if you recall?
>
> Mr. Gamburg: Objection to [Appellant]. Never identified [Appellant.] She said Pooh.
>
> The Court: She said someone named Pooh.
>
> [The Commonwealth]: Okay, Sorry.
>
> The Court: You will have to rephrase.

*Id.* at 7 (quoting N.T., 1/30/13, at 22-23).

Herein, Appellant does not explain on what basis his counsel should have moved for a mistrial. Instead, he simply quotes the above testimony, and then states that "[a]n evidentiary hearing is required to determine whether trial counsel's failure to submit a motion to the court for a mistrial had any reasonable basis designed to effectuate [Appellant's] interests. If not, then counsel's inactions constituted a miscarriage of justice." Appellant's Brief at 8 (citation omitted). Appellant's undeveloped argument fails to convince us that his underlying claim of trial counsel's ineffectiveness has arguable merit, or that he was prejudiced by counsel's failure to move for a mistrial. Therefore, he has not demonstrated that his PCRA counsel acted ineffectively by withdrawing, rather than litigating this issue.

Lastly, Appellant contends that his PCRA counsel should have argued that his trial counsel acted ineffectively by not objecting to the prosecutor's "expressions of personal opinions and beliefs as to the credibility of the Commonwealth's witnesses." *Id.* at 9. Appellant maintains that the following remarks by the prosecutor were objectionable:

> [The Commonwealth]: Next[,] eyewitness, Ashley Thomas. Ashley Thomas, like Joanne, like Sandy, she's scared. Ashley's scared of two things, ladies and gentlemen. She is scared of retaliation. We know that's real. We know that's legitimate.
>
> [The Commonwealth]: You may think I'm crazy for saying this, but I submit to you, ladies and gentlemen, that Joanna William's [*sic*] prior statements to the police actually corroborate what she is telling you at trial.

*Id.* at 9 (citations to the record omitted).

- 8 -

The PCRA court, and Appellant's PCRA counsel, both concluded that the statements contested by Appellant were not improper expressions of personal belief. *See* PCO at 9 (citation omitted); Petition to Withdraw, 11/4/19, at Exhibit A pg. 3 (No-Merit Letter). On appeal, Appellant offers no response to the court's and counsel's conclusions. He fails to explain what was improper about the prosecutor's arguments, or offer any discussion of how those remarks prejudiced the jurors to the extent that he was denied a fair trial. *See Commonwealth v. Cox*, 728 A.2d 923, 931 (Pa. 1999) ("Reversible error exists only if the unavoidable effect of the supposedly offending language would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence and render a true verdict."). Thus, Appellant has not established that his underlying ineffectiveness claim has arguable merit, or that he was prejudiced by trial counsel's failure to object to the prosecutor's comments. Consequently, PCRA counsel was not ineffective by deciding not to pursue this claim on collateral review.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21