J-S80004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JORGE PARAMO MORA | : | |
| | : | |
| Appellant | : | No. 2194 EDA 2017 |

Appeal from the PCRA Order June 2, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0001850-2013,
CP-15-CR-0003592-2013, CP-15-CR-0003856-2012

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 16, 2018**

Jorge Paramo Mora appeals from the June 2, 2017 order denying him PCRA relief.  We affirm.

Appellant was found guilty, at a jury trial pertaining to three separate criminal action numbers, of one count each of kidnapping, simple assault, obstruction of justice, and terroristic threats, and two counts each of unlawful restraint and witness intimidation.  In September 2012, Appellant lived in Georgia with Guillermina Nayeli Lopez, who was the mother of his son J.M., and Ms. Lopez's then fourteen-year-old sister, L.L.  Due to the fact that Appellant abused Ms. Lopez, Ms. Lopez and L.L. left Appellant's residence with J.M. and went to live in Pennsylvania with their siblings.

On September 16, 2012, Appellant arranged to see his son. Ms. Lopez and L.L waited with J.M. at a McDonald's in Kennett, Pennsylvania, for

Appellant. Appellant arrived in a black Escalade, and Ms. Lopez and L.L. entered the vehicle with J.M. because Appellant said that he was going to take J.M. to a store. Instead, Appellant picked up two other men who were also charged in connection with these events, Jeremy Neace and Johnny Anglin. Immediately after retrieving Neace and Anglin, Appellant began to strike and choke Ms. Lopez, telling her that "she was going to pay for leaving him." N.T. Trial, 11/5/14, at 113.

L.L. started crying and yelling at Appellant to stop. She attempted to exit the car, but could not because the doors were locked. About one-half hour later, the men pulled L.L. from the Escalade and left her on the side of the road. When Ms. Lopez, who was frightened and crying, tried to exit the car, Appellant grabbed her hair and would not let her leave. The three men drove away with Ms. Lopez and J.M. still inside the vehicle. L.L. immediately contacted police with her cell phone. Appellant was apprehended in Georgia the following day, and Ms. Lopez and J.M. were released from his control.

After he was jailed for that criminal episode, Appellant sent Ms. Lopez multiple letters. In some of those documents, Appellant made threats of severe physical harm against Ms. Lopez and members of her family if she cooperated in the prosecution. In other letters, he urged her to alter her testimony in order to exonerate him.

At trial, Appellant claimed that L.L. was not restrained in his vehicle and that Ms. Lopez voluntarily accompanied him to Georgia, but the jury rejected that defense and convicted him of the above-delineated crimes.

The sentencing court imposed a sentence of eight and one-half to eighteen years incarceration. On May 23, 2016, we affirmed in part and reversed in part, concluding that the evidence was insufficient to sustain the conviction for obstruction of justice. *Commonwealth v. Mora*, 151 A.3d 1156 (Pa.Super. 2016) (unpublished memorandum). We did not order re-sentencing, as no sentence had been imposed on that offense.

On June 30, 2016, Appellant filed his present, timely PCRA petition, which was counseled. After a February 17, 2017 hearing, relief was denied on June 2, 2017, and this timely June 27, 2017 appeal followed. Appellant complied with the trial court's directive to file a Pa.R.A.P. 1925(b) statement, and raises a single issue: "Whether the trial court erred in denying and dismissing Appellant's PCRA petition?" Appellant's brief at 4. More specifically, Appellant avers that trial counsel was ineffective in failing to: 1) object or move for a mistrial after a police witness testified that appellant and Ms. Lopez had a seven year relationship that had been abusive; 2) object to the adequacy of the trial court's curative instruction given after a witness indicated that Appellant's letters had been mailed from prison; 3) cross-examine a police witness with the contents of an interview that Neace gave to police; and 4) present Neace as a witness.

Initially, we note that, "Our standard of review for an order denying post-conviction relief is limited to examining whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error. The scope of our review is limited to the findings of the PCRA

- 3 -

court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." **Commonwealth v. Smallwood**, 155 A.3d 1054, 1059 (Pa.Super. 2017) (citations omitted). When analyzing an ineffective-assistance-of-counsel claim, "we begin with the presumption counsel is effective." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017). Additionally, in order to

> prevail on an ineffectiveness claim, [the defendant] must satisfy, by a preponderance of the evidence, the performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied **Strickland** by looking to three elements [a defendant] must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. **See Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975 (1987).

**Id**. at 296-97.

Appellant's first issue pertains to testimony from New Garden Township Detective-Sergeant Keith Codwright. That witness reported that he interviewed Ms. Lopez on the telephone after Appellant was arrested and that,

> She said her [sic] and the defendant had been together for about seven years. The relationship was not very good. They lived in Georgia. . . . After several years of an abusive relationship, she decided to leave [Appellant] with their son. Her brother travelled from Pennsylvania down to Georgia to pick them up and brought them back to Pennsylvania.

N.T. Trial, 11/5/14, at 170-71.

Appellant faults counsel with not objecting to Detective-Sergeant Codwright's description of the relationship between Appellant and Ms. Lopez as abusive. He complains that the indication that he abused the victim before she left for Pennsylvania was prejudicial evidence of prior bad acts. The following events are pertinent to an analysis of this issue. After the detective made the statement in question, the trial court *sua sponte* offered to give the jury a curative instruction and to inform the jury that it must ignore the remark. It noted that Detective-Sergeant Codwright had reported that Ms. Lopez told him that she left Appellant "because of an abusive relationship, allegations of abuse." *Id*. at 181.

Trial counsel declined the instruction, stating, "I wouldn't ask for an instruction because it would highlight it to the jury." *Id*. The court continued, "You don't want a cautionary instruction?" *Id*. Counsel again declined, repeating that it "would highlight" the term abusive. *Id*. Counsel then discussed with Appellant whether he wanted a cautionary instruction about the use of the word abusive, and counsel reported to the judge that, "we are in agreement." *Id*.

The matter was re-visited the following day, when the trial court again offered to tell the jury to ignore the testimony about the abusive nature of the relationship between Appellant and Ms. Lopez. Counsel responded that he and Appellant were waiving the instruction, and reported, "I have explained the pros and cons to the defendant. And I believe we at this point

are making waiver of that instruction being given to the jury" so as not to highlight it. N.T. Trial, 11/6/14, at 262. Appellant then stated, on the record, that he agreed that an instruction to the jury to ignore the term abusive should not be given. *Id*. at 263.

Accordingly, the record establishes that counsel had a reasonable strategy for not asking for a curative instruction. ***Commonwealth v. Pezzeca***, 749 A.2d 968 (Pa.Super. 2000) (counsel was not ineffective for neglecting to ask for curative instruction after jury saw the defendant in shackles as counsel articulated a reasonable basis for not seeking the instruction, explaining that he did not want to draw the jury's attention to the matter). Hence, the PCRA court did not abuse its discretion in concluding that counsel was not ineffective for rejecting the trial court's offer to give a curative instruction as to the abusive-relationship statement.

Appellant next complains that trial counsel should have objected after the trial court gave inadequate instructions when the jury was informed that the letters that Appellant wrote to Ms. Lopez had a prison as the return address. Appellant's brief at 10. The trial court clearly explained to the jury that Appellant's incarceration was for "these offenses only, pre-trial incarceration. That's why [the prison] was the address. It's only for these offenses only, okay?" N.T. Trial, 11/5/14, at 182.

Appellant fails to establish how this instruction was inadequate. The only improper implication that would have flowed from the fact that

Appellant was imprisoned when he sent the threatening and then cajoling letters to Ms. Lopez would have been that he was in jail for other criminal activities. The instruction in question dispelled any notion that Appellant was incarcerated for committing crimes other than the ones for which he was being tried. The fact that Appellant was imprisoned prior to the jury trial for the offenses at issue at trial was not prejudicial in nature. Hence, no relief is due.

Appellant's third averment on appeal is that trial counsel should have cross-examined Detective-Sergeant Codwright regarding an interview that Neace gave to police. Appellant asserts that, in that interview, Neace maintained that Ms. Lopez knew that Appellant was coming to Pennsylvania from Georgia, gave Appellant money to aid in his trip, communicated with Appellant on his drive north, agreed to meet Appellant at the McDonald's in question, and never tried to escape during the many stops, which included an overnight stay at a motel in South Carolina, during the trip back to Georgia. Neace also claimed to police that L.L. was not kept against her will in the Escalade, and was actually dropped off, with money and a cell phone, at a drug store that was close to the McDonald's where Appellant met with the three victims.

Appellant observes that the contents of Neace's interview supported the defense that he presented at trial. Appellant suggests that trial counsel was ineffective when he did not get the interview transcribed and failed to

use it during his cross-examination of Detective-Sergeant Codwright. Appellants brief at 12.

Neace's interview was rank hearsay that Appellant now suggests could have been introduced for the truth of the matter asserted by means of cross-examining a police witness with it. Appellant is mistaken. As our Supreme Court articulated in **Commonwealth v. Baez**, 431 A.2d 909, 912 (Pa. 1981) (emphasis added), a witness can be cross-examined on three grounds:

> (1) by showing that on a prior occasion he made a statement, either oral or written, that is inconsistent with his present testimony; (2) by competent evidence tending to show bias, bad character for truth and honesty, or defects in memory, perception or capacity or (3) by the competent contradictory **testimony of other witnesses** whose version of the facts differs from that of the witness being impeached[.]

Hearsay statements from other witnesses cannot be used, during cross-examination, to contradict a witness's version of events. **Id**. Moreover, Detective-Sergeant Codwright did not testify about any of the events occurring in the vehicle or surrounding Ms. Lopez's trip from Pennsylvania to Georgia. The impeachment in question, which was Neace's version of what transpired, was not a proper subject of impeachment of the police officer. First, it did not constitute a prior inconsistent statement from Detective-Sergeant Codwright. Likewise, Neace's interview did not demonstrate Detective-Sergeant Codwright's bias, poor character for telling the truth, or defects in his memory, perception or capacity. Finally, the statement in

- 8 -

question did not, in any manner, contradict Detective-Sergeant Codwright's direct testimony since he did not testify regarding the events contained in Neace's police interview. Additionally, the interview constituted inadmissible hearsay and could not have been used to impeach Detective-Sergeant Codwright, even if he had testified as an eyewtiness. As trial counsel would not have been permitted to conduct the cross-examination proposed by Appellant, counsel was not ineffective in this respect.

Appellant's final position is that trial counsel was ineffective for failing to interview and present Neace as a witness in support of Appellant's claimed defense that neither victim was held against her will in the Escalade and that Ms. Lopez voluntarily went to Georgia with Appellant.

> A claim that counsel was ineffective for failing to call a potential expert witness to testify at trial requires a petitioner to establish that the witness existed and was available, that counsel was informed of the witness' existence, that the witness was ready and willing to testify, and that the absence of the witness prejudiced the defendant to a point where the defendant was denied a fair trial.

***Commonwealth v. Smith***, 167 A.3d 782, 793 (Pa.Super. 2017) (citation omitted).

In the present case, Appellant's position is untenable because Neace pled guilty in connection with his role in the criminal episode of September 16-17, 2012, and, by entering that plea, directly contradicted the contents of his police interview. Concomitantly, there can be no proffer that Neace was ready and willing to testify on Appellant's behalf in a manner that was

consistent with police statement. Thus, the PCRA court did not abuse its discretion in refusing to find trial counsel was ineffective for not interviewing Neace and presenting him at trial on Appellant's behalf.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/18